## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

CASE NO.: 3:10cv102|RS|EMT

ALISON SAPP WHITE and KEVIN
STRICKLAND WHITE

      Plaintiffs,

vs.

BREG, INC., a Delaware corporation.

      Defendant.

_____

### COMPLAINT AND JURY DEMAND

      Plaintiffs Alison Sapp White ("Mrs. White") and Kevin Strickland White ("Mr. White") (collectively "Plaintiffs"), by and through counsel, complain of Breg, Inc. ("Defendant"), demand a jury trial, and allege as follows:

### JURISDICTION

      1.    This Court has subject-matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332.

      2.    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332 and there is diversity-of-citizenship.

      3.    This Court has personal jurisdiction over Defendant in that at all relevant times, Defendant (a) transacted business in the state of Florida; (b) contracted to supply services or goods in Pensacola, Florida, specifically the Defendant's pain pumps; or (c) caused injury within the state of Florida.

U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

10 APR -5  AM 0: 59

FILED

$350.00 – FLN30000 4017

**PARTIES**

4. Plaintiffs are residents of Anne Arundel County, Maryland. At the time of the surgeries identified in this Complaint, Plaintiffs were residents of Escambia County, Florida.

5. Defendant Breg, Inc., is a Delaware corporation with its principal place of business in Vista, California.

**FACTS COMMON TO THE CLAIMS**

6. At all relevant times described herein, Defendant designed, manufactured, assembled, packaged, promoted, marketed, distributed and/or sold a product called a pain pump, a medical device that delivers a continuous and rate-controlled amount of pain medication, via catheter, directly to a surgical site, including the joint space, for post-surgical pain management.

7. The pain pump is designed and intended to be used with commonly used anesthetics such as lidocaine, marcaine, or sensorcaine with or without epinephrine, over the course of two days or more.

8. The continuous injection of such medications over time directly into or near the shoulder joint can cause serious and permanent damage to the cartilage of the shoulder joint and surrounding tissues, such as chondrolysis, a complete or nearly complete loss of cartilage in the shoulder joint.

9. At all pertinent times described herein, Defendant represented to the public and to health-care professionals that the pain pump was a safe and effective product used to alleviate pain.

2

10.    At all pertinent times described herein, Defendant represented to the public and health care professionals that pain pumps could appropriately be used in or near the shoulder joint.

11.    At all pertinent times described herein, Defendant knew that its pain pump was not cleared by the United States Food and Drug Administration ("FDA") for use in the joint space. In fact, Defendant knew that the FDA had repeatedly rejected requests by pain pump manufacturers for permission to market these devices for orthopedic use and/or use in the joint space, based on a lack of safety data.

12.    At all pertinent times, Defendant knew or should have known that its pain pumps, when used with anesthetic medications in the joint space, could be toxic to shoulder joint cartilage. Defendant failed to conduct meaningful studies to determine the toxicity of its pain pumps to human cartilage when used with anesthetic medications in the joint space.

13.    Defendant actively promoted its pain pumps to orthopedic surgeons for orthopedic use and/or use in the joint space, despite the FDA's denial of permission to market the device for these indications.

14.    Defendant did not warn Mrs. White or her surgeon that its pain pumps had been denied clearance by the FDA for orthopedic use and/or use in the joint space and that pain pumps' safety for such indications had not been established.

15.    Defendant did not warn Mrs. White or her surgeon about the unreasonable risks and dangers of using the pain pump and anesthetic medications in this manner.

16.    Mrs. White's surgeon used the pain pump in the manner instructed and directed by Defendant.

3

17.   On or about April 7, 2006, Mrs. White underwent arthroscopic surgery on her right shoulder in Pensacola, Florida.

18.   At the conclusion of the surgery, the catheter of a Breg pain pump was inserted into Mrs. White's right shoulder.

19.   On or about June 6, 2006, Mrs. White underwent arthroscopic surgery on her right shoulder in Pensacola, Florida.

20.   At the conclusion of the surgery, the catheter of a Breg pain pump was inserted into Mrs. White's right shoulder.

21.   Defendant made these pain pumps available to Mrs. White and her surgeon for use in Mrs. White's right shoulder following surgery. Additionally, upon information and belief, Defendant represented to Mrs. White's surgeon that the pain pumps could be used in the way in which it was applied to Mrs. White.

22.   Following surgery, Mrs. White began suffering, and continues to suffer, severe cartilage loss in her right shoulder.

23.   The pain pumps used after Mrs. White's surgeries have caused the degeneration of the cartilage in her right shoulder.

24.   The administration of anesthetic solution by the pain pump directly led to cartilage and tissue damage in Mrs. White's right shoulder, resulting in severe pain, weakness, and decreased range of motion in her right shoulder, and requiring further medical treatment, including a total shoulder replacement.

25.   Mrs. White's injuries have resulted in permanent disability in her right shoulder and limited daily activity.

26.     As a direct result of the use of the pain pumps in Mrs. White's right shoulder, she has suffered harms and losses, including, but not limited to, severe physical pain, mental suffering, inconvenience, loss of the enjoyment of life, past and future medical, surgical, and related expenses, past loss of wages, loss of earning capacity, loss of household services, and care gratuitously rendered.

## FIRST CAUSE OF ACTION
### (Strict Products Liability)

27.     Plaintiffs incorporate by reference paragraphs 1 through 26 above as if fully set forth herein.

28.     On information and belief, Defendant designed, tested, manufactured, assembled, labeled, marketed, distributed, and sold pain pump(s).

29.     The pain pump was defectively designed in that, among other things, the continuous infusion of post-surgical anesthetic solution at the delivery rates achieved by the pain pump can cause permanent shoulder injury, such as severe chondrolysis and total destruction of cartilage and surrounding tissue.

30.     Additionally, the pain pump was advertised and marketed for use as a post-surgery mechanism to deliver anesthetic solution to the shoulder.

31.     As a result of this design defect, Defendant's pain pump is unreasonably dangerous.

32.     As a result of its design, when used in a manner reasonably foreseeable to Defendant, the pain pump failed to perform as safely as an ordinary and reasonable user would expect.

33.     Defendant's pain pump was more dangerous than an ordinary and reasonable user of the pain pump would expect considering the pain pump's

characteristics, uses that were foreseeable to Defendant, and any instructions or warnings given by Defendant.

34. Plaintiffs did not have actual knowledge, training, or experience sufficient to know the danger posed by use of Defendant's pain pump in or near the shoulder joint.

35. On information and belief, Mrs. White's surgeon did not have actual knowledge sufficient to know the danger posed by use of Defendant's pain pump in or near the shoulder joint, and Defendant did not give Plaintiffs or the surgeon sufficient warning regarding the danger posed by use of Defendant's pain pump in or near the shoulder joint.

36. The design defect in Defendant's pain pump was present at the time Defendant manufactured, distributed, and sold the pain pump.

37. The pain pump was expected to and did reach the ultimate user without substantial change in the condition in which it was sold and distributed.

38. Defendant knew, or reasonably should have known, of the danger posed by use of its pain pump in or near the shoulder joint.

39. Defendant was required to warn about the danger posed by the foreseeable use of its pain pump in or near the shoulder joint.

40. Defendant failed to provide an adequate warning to Plaintiffs or Mrs. White's surgeon at the time Defendant's pain pump was manufactured, distributed, and sold in that, in light of the ordinary knowledge common to members of the community who use Defendant's pain pump, Defendant failed to:

a. make a warning that was designed to reasonably catch the attention of Mrs. White and Mrs. White's surgeon;

    b.  make a warning that was understandable to Mrs. White and Mrs. White's surgeon;

    c.  make a warning that fairly indicated the danger from the pain pump's foreseeable use in or near the shoulder joint;

    d.  make a warning that was sufficiently conspicuous to match the magnitude of the danger posed by use of the pain pump in or near the shoulder joint.

    e.  make a warning that disclosed that the effectiveness of the device was uncertain for use in the shoulder joint space;

    f.  make a warning that disclosed that the FDA had considered pain pump manufacturers' requests to put this indication in the pain pump label and that the FDA had rejected this precise indication for the use of pain pumps to deliver the pain medicine directly into the joint space; and

    g.  make a warning that when used as designed, the pain pump delivered, over time, dangerously high doses of medication directly into the shoulder joint.

    41.  The pain pump device was unreasonably and dangerously defective because, at no time did Defendant conduct adequate testing to determine whether pain pumps placed for infusion in or near the joint space, could cause damage to articular cartilage.

    42.  Defendant's failure to make an adequate warning made Defendant's pain pump defective and unreasonably dangerous.

    43.  The defects in the Pain Pump were a proximate cause of Plaintiffs' harms and losses.

4816-0314-9829.1                        7

44.     As a direct and proximate result of Defendant's fault set forth generally above, Plaintiffs have suffered and will continue to suffer damages.

## SECOND CAUSE OF ACTION
### (Negligence)

45.     Plaintiffs incorporate by reference paragraphs 1 through 26 above as if fully set forth herein.

46.     Defendant had a duty to design, manufacture, test, inspect, assemble, label, market, distribute, and sell its pain pump so as to eliminate any unreasonable risk of foreseeable injury.

47.     At all relevant times, Defendant breached this duty and failed to use reasonable care in designing, manufacturing, testing, inspecting, assembling, labeling, marketing, distributing, and selling its pain pump. Defendant's negligence includes, but is not limited to, the following:

        a.     Defendant failed to conduct a proper assessment and analysis of the design and assembly of the pain pump and its individual parts;

        b.     Defendant failed to properly test and/or inspect the pain pump in the environment in which it was to be used to ensure that the pain pump would be safely used in a manner and for a purpose for which it was made;

        c.     Defendant failed to recall the pain pump and failed to provide adequate post-marketing warnings and instructions to physicians and medical providers using the pain pump;

        d.     Use of the pain pump in the joint space had not been cleared by the FDA, and in fact had been specifically rejected by the FDA;

e.      Continuous injection of such medications, through a catheter,
directly into or near the shoulder joint, for two or more days had not been adequately tested
for safety or effectiveness;

f.      The risk of chondrolysis and other serious post-operative problems
associated with using the pain pumps as designed and instructed outweighed the possible
benefits of such use.

48.     Defendant's failure to use reasonable care made its pain pump unreasonably
dangerous.

49.     Defendant was required to warn about the danger posed by the foreseeable
use of its pain pump in or near the shoulder joint.

50.     Defendant failed to exercise reasonable care to provide an adequate warning
to Mrs. White or her surgeons regarding use of the pain pump in or near the shoulder.

51.     Defendant's negligence was a proximate cause of Plaintiffs' harms and
losses.

52.     As a direct and proximate result of Defendant's fault set forth generally
above, Plaintiffs have suffered and will continue to suffer damages.

## THIRD CAUSE OF ACTION
### (Loss of Consortium)

53.     Plaintiffs incorporate paragraphs 1 through 26 above as if fully set forth
herein.

54.     As a direct, foreseeable and proximate result of the injuries to his spouse, as
stated above, Plaintiff Kevin Strickland White has suffered the loss of love, affection,
protection, support, services, companionship, care, society and marital relationship, all to
her damage, in an amount to be determined by the jury.

55.     As a direct and proximate result of Defendant's fault set forth generally above, Plaintiffs have suffered and will continue to suffer damages.

WHEREFORE, as to all Counts above, Plaintiffs request a trial by jury, judgment against Defendant for the following damages, in amounts to be proven at trial:

a.      General damages for severe physical pain, mental suffering, inconvenience, and loss of the enjoyment of life;

b.      Past, present, and future damages for the costs of medical, surgical, and rehabilitative treatment and care;

c.      Damages for Plaintiffs' past lost wages and loss of earning capacity;

d.      Past, present, and future damages for loss of Mrs. White's household services and assistance;

e.      Past, present, and future damages for care gratuitously rendered;

f.      Past, present, and future damages for loss of society, comfort, companionship, support, and consortium; and

G.      For such further relief as the Court deems just and appropriate.

## DEMAND FOR JURY

Plaintiffs request a trial by jury of all issues so triable.

DATED this ___ day of April, 2010.

Brenda S. Fulmer
Florida Bar No.:   999891
Searcy Denney Scarola Barnhart &
Shipley, P.A.
2139 Palm Beach lakes Boulevard
West Palm Beach, Fl  33409
Phone:  (561) 686-6300

4816-0314-9829.1                                                    10